IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SAMUEL ROBERT QUEEN,

                Plaintiff,

        v.                                        CASE NO. 05-3005-SAC

MILDNER, FNU, et al.,

                Defendants.

**MEMORANDUM AND ORDER**

This matter is a *Bivens*[1]-type civil rights action filed by a prisoner in federal custody. It comes before the Court on defendants' motion to dismiss, or, in the alternative, motion for summary judgment (Doc. 99). For the reasons that follow, the Court grants the motion and dismisses this matter.

**Nature of the Complaint**

Plaintiff claims that defendants interfered with his access to the courts by removing legal materials from his cell in the Special Housing Unit (SHU), by failing to provide him with administrative remedy forms, by failing to provide him with photocopies, by denying him access to the law library in the SHU, by failing to provide him with financial statements from his institutional account, and by retaliating against him by transferring him to a higher security prison.

**Procedural History**

Plaintiff commenced this action on January 7, 2005. On January

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

18, before the matter had been screened, he filed a supplement to the complaint. On January 21, 2005, the Court directed him to submit a financial statement that complied with 28 U.S.C. § 1915(b) and a complaint presented on a form pleading.

Plaintiff filed an amended complaint on February 4, 2005. He alleged a failure to file grievances and provide him with documents needed for access to the courts, including grievances, financial statements, and unspecified copies. He alleged that the defendants now avoided visiting him in segregation, causing him humiliation. As relief, he sought declaratory and injunctive relief and attorney fees.

On February 28, 2005, plaintiff filed a motion for joinder of parties, which sought to add two defendants, J.D. Crook and Cindy Ashman. On April 26, 2005, he filed a motion to dismiss defendant Goode. On May 3, 2005, he filed a motion to amend the complaint seeking to add defendants Ashman and Crook and to remove defendant Goode. He also filed a second motion on the same day to add defendants Crook and Ashman; that pleading alleged retaliation by Grey and Ashman for filing lawsuits by unreasonable classification and claimed that Crook admonished him for filing over 100 grievances during his 12 years of incarceration. Plaintiff asserted that Crook had aided defendants in their attempts to keep him from filing for redress.

On May 12, 2005, the Court ordered plaintiff to submit an initial partial filing fee, denied his motion for preliminary injunctive relief, granted his motions to add defendants Ashman and Crook, granted the motion to dismiss defendant Goode, and granted his two motions to amend the complaint.

Plaintiff submitted the initial partial filing fee in June 2005. On February 2, 2006, the Court granted leave to proceed in forma

pauperis and directed the service of process on defendants Mildner, Grey, Childs, Ashman and Crook.

On March 6, 2006, plaintiff filed a motion for leave to amend the complaint, and on April 3, 2006, he filed a supplement to the motion.

On July 13, 2006, defendants filed a motion to dismiss the complaint under 28 U.S.C. § 1915(g), asserting that plaintiff was subject to the "three strikes" provision of the federal in forma pauperis statute. On August 3, 2006, the Court directed plaintiff to submit the $50.00 balance owed on the filing fee. Plaintiff failed to do that, and the Court dismissed the matter without prejudice on September 12, 2006.

Following the dismissal, plaintiff filed two motions for relief from judgment, a motion to modify payments, a motion to return original exhibits, and a motion for relief from judgment in the nature of mandamus. On October 31, 2017, the Court granted the motions for relief from judgment, reopened the action, and requested a status report from the parties.

In January 2018, plaintiff filed a motion to amend the complaint, and in February 2018, he filed another motion to amend. In May 2018, he filed a motion for judgment on the pleadings, or, in the alternative, for summary judgment. On November 29, 2018, defendants filed a motion to dismiss, or, in the alternative, for summary judgment.

### Plaintiff's motion for reconsideration

Plaintiff filed an objection to the Court's ruling denying his most recent motions to amend, filed in January and February 2018. He asserts the denial of those requests is an abuse of discretion.

Generally, there are three grounds that justify the reconsideration of an interlocutory order: "(1) an intervening change in the controlling law; (2) new evidence [that was] previously unavailable; [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); D. Kan. R. 7.3(b).

As reflected in the procedural history shown above, plaintiff had filed multiple similar motions in this matter and had been advised that he would not be allowed additional amendment except upon a showing of good cause. The Court has reviewed its order rejecting the most recent motions to amend in light of the standards governing a motion for reconsideration and finds no ground to grant relief.

## Legal Standards

### Fed. R. Civ. P. 12(b)(1) Standard

Dismissal under Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims asserted in the complaint. Dismissal under this provision is not a judgment on the merits of the action but rather a determination that the court lacks authority to adjudicate the matter. *See Castanedea v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)(recognizing that the federal courts are courts of limited jurisdiction and may exercise jurisdiction only where they specifically are authorized to do so).

Motions to dismiss brought under Rule 12(b)(1) "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). If the motion is a facial challenge, the Court accepts the plaintiff's

allegations as true. *Id*. Where the motion is brought as a factual attack, a court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

**Fed. R. Civ. P. 12(b)(6)**

"The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6)(a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). In reviewing a motion under Rule 12(b)(6), the court "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)(citation omitted). Pleadings that present only bare legal conclusions are not given the assumption of truth; instead, they must be supported by allegations of fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009).

**Summary Judgment Standards**

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views all evidence and draws all reasonable inferences in the light most favorable to the party opposing summary judgment. *Pinkerton v. Colorado Dep't. of*

*Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009)(citation omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### Uncontroverted Facts

1. Plaintiff a federal prisoner who was incarcerated at the United States Penitentiary Leavenworth (USPL) from August 17, 2001, through August 26, 2005. (Doc. 100, Ex. 1, Decl. of Mary A. Noland, Deputy Regional Counsel, Attach. A, Plaintiff's Public Information Data and Attach. B. Inmate History (Institutions)).
2. The federal Bureau of Prisons (BOP) has a four-part administrative remedy procedure available to prisoners in its custody. (Doc. 100, Noland decl., Attach. C, Program Statement 1330.18, *Administrative Remedy Program*.)
3. The administrative remedy procedure requires a federal prisoner to first seek the informal resolution of the complaint. If that is unsuccessful, the prisoner must file a written grievance to the warden of the facility. The prisoner next may appeal to the Regional Director. Finally, the inmate may appeal to the Director, National Inmate Appeals, in the Office of the General Counsel. (Noland decl. par. 7.)
4. The BOP maintains SENTRY, a central database of administrative grievances filed by federal prisoners. The database is not purged and allows a search of prisoner grievances from the time of its creation in 1990. (Noland decl. par. 10.)
5. SENTRY reflects that plaintiff has filed 273 administrative grievances during his incarceration and has exhausted 48 claims,

including administrative discipline, sanitation in the SHU, clothing, mail, storage space, classification, the Inmate Financial Responsibility Program, filing fee deductions, financial encumbrances, and the execution of the Judgment and Commitment Order in his criminal case. (Noland decl. par 11 and Attach. D., administrative remedy generalized retrieval data.)

6. While housed in the SHU at USPL, plaintiff filed 28 administrative grievances. (Noland decl. par. 12, Attach. E. Administrative Remedy Data 05-04-2004 – 08-31-2005.)

7. The BOP allows federal correctional facilities to designate an Administrative Remedy Coordinator (ARC) to oversee the grievance procedure at all levels. At USPL, this function is managed by the Executive Assistance to the Warden. Incident to this responsibility, the ARC is available to meet with inmates during institutional rounds, weekly rounds in the SHU, and at other times. (Noland decl., par. 14, Attach. C.)

8. The ARC and the Administrative Remedy Clerk are available to address concerns presented by informal requests to staff sent through institutional mail. *Id.* At the time relevant to this action, the USPL population did not have electronic mail. *Id.*

9. The BOP allows the rejection of grievances on certain grounds, such as failure to sign, submission at the wrong tier of review, and failure to provide verification to support late submission. (Noland decl., par. 16, Attach. C.)

10. A prisoner may submit a grievance he deems sensitive directly to the regional or national levels. *Id*.

11. Defendants Mildner, Childs, and Gray were members of plaintiff's Unit Team during the relevant period. They routinely met with inmates

in their caseload who were housed in the SHU. (Ex. 2, Declaration of Charles Mildner; Ex. 3, Declaration of John Childs; Ex. 4, Declaration of Michael Gray.) The Unit Team members conducted rounds as a group, met with prisoners assigned to their caseload, and brought materials with them to address concerns with those prisoners. *Id*. These weekly rounds included the SHU and Building 63 when that building was used as overflow housing for prisoners assigned to the SHU. *Id*.

## Analysis

**Claims against defendants in their official capacity**

Plaintiff appears to sue defendants in both their individual and official capacities. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In *Bivens*, the Supreme Court identified a remedy for constitutional violations committed by federal officials. *Bivens*, 403 U.S. 388. It is settled, however, that "a *Bivens* claim can be brought only against federal officials in their individual capacities" and cannot be presented directly against the United States, federal agencies, or federal officials acting in their official capacities. *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009)(citing *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)); *see also Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002)("A *Bivens* action may not be brought against federal agencies or agents acting in their official capacities.").

Plaintiff's claims against defendants in their official capacities therefore must be dismissed.

**Exhaustion of administrative remedies**

The Prison Litigation Reform Act (PLRA) states: "No action shall

be brought with respect to prison conditions … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to any prisoner who presents a claim concerning "general circumstances or particular episodes" of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The exhaustion requirement is mandatory. *Jones v. Bock*, 549 U.S. 199, 211 (2007). However, the requirement extends only to the exhaustion of "available" remedies. *See Ross v. Blake*, 136 S. Ct. 1850 1858-60 (2016). An administrative procedure may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because the failure to exhaust is an affirmative defense, defendants have "the burden of asserting and proving that the plaintiff did not utilize administrative remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). However, "[o]nce a defendant proves that a plaintiff failed to exhaust … the onus falls on the plaintiff to show that remedies are unavailable to him." *Id*.

The records produced by defendants show that plaintiff filed 28 grievances between May 2004 and August 2005 while held in the SHU, (Doc. 100, Ex. 1, Attach. E), and the declarations by the Unit Team members who had regular contact with the plaintiff set out the process

for requesting forms and addressing concerns.

The records presented by defendants show that plaintiff filed grievances on a variety of issues, but there is no evidence that he completed the remedy process on the issues he presents in this action. In contrast, plaintiff makes only general statements that he was not provided adequate access to the administrative remedy procedures; his conclusory allegations are insufficient to demonstrate that there is a genuine issue of fact in this matter.

Moreover, as defendants argue, plaintiff's claim concerning access to the grievance procedure is essentially the same as a claim presented in his amended complaint in Case No. 05-3275-SAC. In that case, plaintiff alleged the intentional denial of the right to seek redress of grievances by defendants including defendants Gray, Childs, and Mildner. This Court rejected that claim, and the decision was affirmed on appeal. *Queen v. McIntire, et al.*, 290 F.3d Appx. 162, 2008 WL 3906751 (10th Cir. Aug. 25, 2008). Likewise, in Case No. 05-3022, plaintiff, proceeding under both *Bivens* and the Federal Tort Claims Act, alleged a loss of legal materials incident to his May 2004 transfer into the SHU, the denial of remedy forms, and the destruction of remedy forms. The Court granted defendants' motion to dismiss, or, in the alternative, for summary judgment, finding, in part, that the record submitted by defendants suggested that plaintiff did not properly exhaust available remedies concerning claims of access to the grievance procedure and retaliatory conduct. Plaintiff did not appeal.

These claims are subject to dismissal under the principles of res judicata and issue preclusion. "'The doctrine of res judicata, or claim preclusion, will prevent a party from relitigating a legal

claim that was or could have been the subject of a previously issued final judgment.'" *Sullivan v. Davita Healthcare Partners, Inc.*, ___ Fed. Appx. ___, 2019 WL 2756447, at *2 (10th Cir. Jul. 2, 2019)(quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)). Claim preclusion requires three elements: first, a final judgment on the merits in the earlier action; second, identity of the parties or privies in the two lawsuits; and third, the identity of the cause of action in both suits. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017)(quoting *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)).

Issue preclusion applies to bar the consideration of claims where the issue previously decided is identical; the prior action was decided on the merits; the party against whom the doctrine is asserted was a party or in privity with a party in the prior action; and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the question in the prior action. *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1207 (10th Cir. 2001).

Here, it appears that plaintiff presented essentially the same claim concerning his access to administrative remedy procedures against the same parties in the present action, in Case No. 05-3022 and Case No. 05-3275. Because the Court reached a decision adverse to plaintiff on that issue in Case Nos. 05-3022 and 05-3275, that claim should not be relitigated in the present action.

**Claims for declaratory and injunctive relief**

Under the mootness doctrine, the Court must consider whether "a definite controversy exists throughout the litigation and whether conclusive relief may still be conferred by the court despite the lapse

of time and any change of circumstances that may have occurred since the commencement of the action." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011)(quoting *Moore's Federal Practice* § 101.90 (3d ed. 2010)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974).

"The touchstone of the mootness inquiry is whether the controversy continues to touch the legal relations of parties having adverse legal interests in the outcome of the case, and this legal interest must be more than simply the satisfaction of a declaration that a person was wronged." *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004)(quotations omitted)(holding prisoner's claims for declaratory and injunctive relief were moot due to his release from prison). *See also Mitchell v. Estrada*, 225 F.App'x 737, 741 (10th Cir. 2007)("An inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief related to conditions of confinement.")

Plaintiff's requests for injunctive relief are moot due to his transfer from the USPL and must be dismissed.

**Plaintiff's claims for monetary relief and attorney's fees**

First, to the extent plaintiff's complaint may be read to seek compensatory damages, he cannot recover because he does not allege that he sustained a physical injury. The Prison Litigation Reform Act provides, in relevant part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997e(e). "The statute limits the remedies available, regardless of the rights

asserted, if the only injuries are mental or emotional." *Searles v. VanBebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002).

Next, plaintiff's claim for punitive damages requires a showing that the defendants' conduct was "motivated by evil motive or intent, or … involves reckless or callous indifference to the federally protected rights of others." *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Because plaintiff has not plausibly alleged such conduct, the Court concludes that his request for punitive damages must be dismissed.

Plaintiff also seeks attorneys' fees as relief. However, plaintiff, as a party proceeding pro se, is not entitled to such relief as he has not incurred such fees. See *Kay v. Ehrler*, 499 U.S. 432 (1991)(holding that a party who proceeds pro se in an action under 42 U.S.C. § 1983 may not recover attorneys' fees).

**Retaliatory transfer**

Finally, plaintiff alleges that he was subjected to retaliatory conduct due to his pursuit of legal remedies. He specifically identifies his transfer from USPL to the United States Penitentiary, Marion, as a retaliatory act.

Prison officials may not retaliate against a prisoner for exercising constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). However, to prevail on a claim of unlawful retaliation, a plaintiff must show that he was engaged in a protected activity, that the defendants caused him an injury that would deter a person of ordinary firmness from continuing in that activity, and that the actions of the defendants were substantially motivated by the plaintiff's exercise of constitutional rights. *Shero v. City of*

*Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

An "inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006)(quotations and citations omitted). Accordingly, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).

As defendants point out, plaintiff himself has supplied the request for transfer completed in May 2005, which identifies the factual grounds for his redesignation: in December 2004, plaintiff was seen pushing two homemade weapons from his cell window. The weapons appeared to be made from melted food tray lids; one of them measured 19 inches, and the other measured 13 inches. In January 2005, plaintiff was found guilty of possessing a weapon. He also was found guilty in January 2005 of threatening and refusing an order. The report states, "[d]ue to the seriousness and number of charges QUEEN has been found guilty of in the past twelve months, the security constraints of USP Marion are recommended." (Doc. 89, Attach. p. 21.).

Plaintiff has not refuted these grounds, and he makes only bare claims concerning the defendants' motivation for requesting his transfer. The Court concludes plaintiff has not plausibly stated a claim for retaliatory conduct.

## Conclusion

For the reasons set forth, the Court finds defendants' motion to dismiss or, in the alternative, for summary judgment should be granted.

IT IS, THEREFORE, BY THE COURT ORDERED the motion of defendants Ashman, Childs, Crook, Grey, and Mildner to dismiss, or, in the alternative, for summary judgment (Doc. 99) is granted.

IT IS FURTHER ORDERED plaintiff's motion for reconsideration (Doc. 118) is denied.

**IT IS SO ORDERED.**

DATED:  This 24th day of September, 2019, at Topeka, Kansas.

S/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge